1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11

MISTY A. COX,

                            Plaintiff,

        v.

CAROLYN W. COLVIN, Commissioner of
Social Security, [1]

                            Defendant.

Case No. 3:12-cv-05647-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

12
13
14
15
16
17
18

    Plaintiff has brought this matter for judicial review of defendant's denial of her

application for supplemental security income ("SSI") benefits.  Pursuant to 28 U.S.C. § 636(c),

Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have

this matter heard by the undersigned Magistrate Judge.  After reviewing the parties' briefs and

the remaining record, the Court hereby finds that for the reasons set forth below, defendant's

decision to deny benefits should be affirmed.

19
20

                    FACTUAL AND PROCEDURAL HISTORY

21
22
23
24

    On February 24, 2006, plaintiff filed an application for SSI benefits, alleging disability as

of January 1, 2003, due to multiple mental and physical impairments. See Administrative Record

("AR") 116, 614.  That application was denied upon initial administrative review on March 8,

2006, and on reconsideration on September 11, 2006. See AR 614.  A hearing was held before an

25
26

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security
Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for
Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the
docket accordingly.**

ORDER - 1

administrative law judge ("ALJ") on September 3, 2008, at which plaintiff, represented by counsel, appeared and testified. See AR 25-54.

In a decision dated September 28, 2008, the ALJ determined plaintiff to be not disabled. See AR 614-24. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on November 23, 2009, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 416.1481. Plaintiff appealed that decision to this Court, which on August 7, 2010, remanded the matter to the Commissioner for further administrative proceedings. See 589-607. On March 3, 2011, another hearing was held before the same ALJ, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 557-88.

In a decision dated April 1, 2011, the ALJ again determined plaintiff to be not disabled. See AR 535-51. On May 22, 2012, the Appeals Council found no reason to assume jurisdiction of the case. See AR 522; 20 C.F.R. § 416.1484. The ALJ's decision therefore became the Commissioner's final decision after sixty days. See 20 C.F.R. § 416.1484. On August 1, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3. The administrative record was filed with the Court on November 13, 2012. See ECF #10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues that the Commissioner's final decision should be reversed and that this matter should be remanded for an award of benefits, because the ALJ erred (1) in rejecting the opinion of Daniel M. Neims, Psy.D., and (2) in failing to properly consider the impact of plaintiff's carpal tunnel syndrome. For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged, and therefore finds that defendant's decision to deny benefits

ORDER - 2

1    should be affirmed.

2                                        DISCUSSION

3            The determination of the Commissioner that a claimant is not disabled must be upheld by

4    the Court, if the "proper legal standards" have been applied by the Commissioner, and the

5    "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler,

6    785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security

7    Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D.

8    Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the

9

10   proper legal standards were not applied in weighing the evidence and making the decision.")

11   (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

12           Substantial evidence is "such relevant evidence as a reasonable mind might accept as

13   adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation

14   omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

15   supported by inferences reasonably drawn from the record.").  "The substantial evidence test

16   requires that the reviewing court determine" whether the Commissioner's decision is "supported

17   by more than a scintilla of evidence, although less than a preponderance of the evidence is

18   required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence

19   admits of more than one rational interpretation," the Commissioner's decision must be upheld.

20   Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

21

22   sufficient to support either outcome, we must affirm the decision actually made.") (quoting

23   Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

24

25

26   _____

[2] As the Ninth Circuit has further explained:

        . . . It is immaterial that the evidence in a case would permit a different conclusion than that
        which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by

ORDER - 3

1

2     I.      The ALJ's Evaluation of the Medical Evidence in the Record

3            The ALJ is responsible for determining credibility and resolving ambiguities and

4     conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

5     Where the medical evidence in the record is not conclusive, "questions of credibility and

6     resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

7     642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v.

8     Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

9

10    whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

11    all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

12    within this responsibility." Id. at 603.

13           In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

14    "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

15    "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

16    stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

17    "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

18    draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

19    F.2d 747, 755, (9th Cir. 1989).

20           The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

21

22    opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

23

24    _____

25            substantial evidence, the courts are required to accept them.  It is the function of the
              [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
26            not try the case de novo, neither may it abdicate its traditional function of review.  It must
              scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
              rational.  If they are . . . they must be upheld.

      Sorenson, 514 F.2d at 1119 n.10.

      ORDER - 4

1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

only be rejected for specific and legitimate reasons that are supported by substantial evidence in

the record."  Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

or her.  Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

(citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative

evidence has been rejected."  Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981);

Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

        In general, more weight is given to a treating physician's opinion than to the opinions of

those who do not treat the claimant.  See Lester, 81 F.3d at 830.  On the other hand, an ALJ need

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

inadequately supported by clinical findings" or "by the record as a whole."  Batson v.

Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v.

Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.

2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a

nonexamining physician."  Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may

constitute substantial evidence if "it is consistent with other independent evidence in the record."

Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

        Plaintiff takes issue with the ALJ's following findings:

> On a 2009 [state agency] evaluation form, Daniel Neims, Psy.D., checked
> boxes indicating that the claimant is markedly limited in her ability to exercise
> judgment and make decisions and moderately limited in her ability to perform
> routine tasks, marked [sic] limited as to social functioning (Exhibit 22F6).  I
> find neither to be persuasive.  There has been no longitudinal change in the
> claimant's functioning.  As to cognitive functioning, the degree of limitation
> noted by Dr. Neims is inconsistent with the psychologist's other exam
> findings, including only a mild limitation in her ability to do more complex
> tasks and learn new tasks.  As to social functioning, the degrees of limitation
> implicated in this evaluation are inconsistent with the claimant's actual range

of social activity.  As discussed above, the claimant demonstrated some degree of social limitation, but she has been able to attend weekly support group meetings and help "chair" meetings.  Also, medical providers have observed the claimant with a euthymic mood and that she has been cooperative and engaging.  The psychologist likely relied heavily on the claimant's self-report of which there are credibility concerns.  Therefore, I accord Dr. Neim's check-the-box opinions that exceed the residual functional capacity found in this decision little weight.

AR 547.  Specifically, plaintiff asserts error in regard to the ALJ's stated reason for rejecting the cognitive limitations Dr. Neims found.  But the moderate limitation in performing routine tasks and the marked limitation in exercising judgment and making decisions Dr. Neims assessed, is not entirely consistent with the mild limitations in learning new tasks and in understanding, remembering and following complex tasks he also assessed, or at least it was not unreasonable for the ALJ to find such.  See AR 742; Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between medical opinion source's functional assessment and that source's clinical notes, recorded observations and other comments regarding claimant's capabilities "is a clear and convincing reason for not relying" on that assessment); see also Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989).

Plaintiff argues that the marked limitation in exercising judgment is based on her history of poor social judgment, and that "[t]he record is replete with evidence supporting this limitation." ECF #13, p. 5.  But there is no indication Dr. Neims actually based the marked limitation in exercising judgment on plaintiff's history.  See AR 742.  Even if he did, this still does not explain the inconsistency in the severity between this and the other cognitive limitations he found.  In addition, the evidence plaintiff points to is almost all – if not entirely – based on her own self-reports.  See ECF #13, p. 5 (citing and quoting AR 36, 298, 355, 385, 486, 506, 562-63, 574, 738, 851).  Nor do those self-reports necessarily establish the existence of such limitations.  Further, the ALJ found plaintiff was not fully credible concerning her subjective complaints (see

ORDER - 6

AR 542-44) – a finding she has not challenged – and while the ALJ did not specifically discount

the moderate to marked cognitive limitations Dr. Neims assessed on this basis, as discussed

below he did so in regard to the social limitations Dr. Neims also assessed, and plaintiff's lack of

credibility concerning her subjective complaints overall does undermine the persuasiveness of

her argument here. See Morgan, 169 F.3d at 601 (medical source's opinion premised to large

extent on claimant's own accounts of her symptoms and limitations may be disregarded where

those complaints have been properly discounted).

As just discussed, the ALJ discounted the social limitations Dr. Neims assessed because

he appeared to rely heavily on plaintiff's subjective self-reporting.  Citing Ryan v. Commissioner

of Social Security, 528 F.3d 1194 (9th Cir. 2008), plaintiff argues "an ALJ does not provide clear

and convincing reasons for rejecting an examining [psychologist]'s opinion by questioning the

credibility of the [claimant's] complaints where the [psychologist] does not discredit those

complaints and supports his ultimate opinion with his own observations." Id. at 1199-1200.  But

in Ryan there was "nothing in the record to suggest" the examining psychologist relied on the

claimant's "description of her symptoms . . . more heavily than his own clinical observations."

Id. at 1200.  Here, though, the evaluation form Dr. Neims completed strongly suggests he did in

fact rely heavily on plaintiff's self-reporting, or at least he did so to a greater extent than he did

on any objective clinical findings of his own. See AR 737-47.

In addition, although not specifically challenged by plaintiff, the Court finds no fault in

the ALJ also discounting the social limitations assessed by Dr. Neims in part on the basis that

other providers had observed behavior during their evaluations of her that are at odds with those

limitations. See AR 547; see also AR 299, 304, 309, 385, 387, 507, 514, 715, 721, 760, 762, 772,

786, 841, 844, 847, 852, 862-64; Batson, 359 F.3d at 1195 (ALJ need not accept even treating

physician's opinion if inadequately supported "by the record as a whole"). Accordingly, for all of the above reasons, the Court finds the ALJ was not remiss in rejecting the moderate to marked cognitive and social functioning limitations[3] Dr. Neims assessed.

II.      Plaintiff's Carpal Tunnel Syndrome

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

---

[3] This remains so for those same reasons, even though the Court agrees with plaintiff that the ALJ erred in rejecting the marked social limitations Dr. Neims assessed based on plaintiff's "actual range of social activity" (AR 547), as it is not at all clear that such activity is inconsistent with the severity of limitation Dr. Neims found (see AR 544).

ORDER - 8

The ALJ in this case found plaintiff had severe impairments consisting of a bipolar disorder, a personality disorder, and a posttraumatic stress disorder. See AR 538.  The ALJ went on to find in relevant part:

> Additionally, the claimant alleges a 3-year history of carpel tunnel syndrome (CFS).  However, the claimant only recently underwent electrodiagnostic testing in November 2010 (Exhibit 25F).  Also, there is no significant mention of CTS-related symptoms until May 2010 (Exhibit 26F10).  Moreover, on exam, the claimant showed no hand atrophy (an indicator that there is *not* disuse) and she did not appear to be in acute distress.  She had not been using her old splints (Exhibit 26F5-6).  While she was unable to identify pinprick in all fingertips, the claimant had calluses at the distal finger pads, which may account for the decreased sensation.  The claimant did identify sensation proximally in the fingers; she had pain free range of motion (Exhibit 25F; see also 26F.6).  The claimant's failure to follow through with a medical referral raises another significant credibility concern.  In May 2010, the claimant was referred to a neurologist for a nerve conduction study (Exhibit 26F.10).  Yet, despite her allegations of limiting symptoms, the claimant did not follow through with the referral until November 2010 (Exhibit 25F).  Further, with treatment, there is no clinical evidence indicating that such symptoms will persist for the requisite 12 consecutive months or longer (See e.g. Exhibit 26F).

AR 538-39 (emphasis in original) (internal footnote omitted).  Plaintiff argues the evidence in the record shows she has moderately severe carpal tunnel syndrome with demonstrated hand numbness on flexion. See ECF #13, p. 8 (citing AR 803-04, 814).  But while the record clearly shows she has carpal tunnel syndrome with some associated symptoms, as noted by the ALJ there is no clinical evidence of – and no medical opinion source has assessed any – actual work-related limitations stemming from that impairment lasting for longer than the minimally-required time period. See AR 789-90, 803-06, 809-16; see also Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant has burden of proving he or she suffers from medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for continuous period of not less than twelve months).

Despite this lack of objective evidence of actual work-related limitations, the ALJ went

ORDER - 9

on to find that if plaintiff's carpal tunnel syndrome were found to be severe, she would be limited to "repetitive, but not constant flexion and extension of the wrist, and repetitive, but not constant fingering, handling, and gripping" (AR 549), which the vocational expert testified would not prevent plaintiff from working (see AR 584-85). Accordingly, even if the ALJ did err in finding plaintiff's carpal tunnel syndrome was not a severe impairment, he more than accounted for any possible functional limitation stemming therefrom demonstrated by the record subsequently in the sequential disability evaluation process. Any such error, therefore, the Court deems to be harmless.[4]

CONCLUSION

For the reasons set forth above, the Court finds that the ALJ did not err as alleged, and therefore that it has not been shown the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 7th day of August, 2013.

Karen L. Strombom
United States Magistrate Judge

---

[4] See Hubbard v. Astrue, 2010 WL 1041553 *1 (9th Cir. 2010) (because claimant prevailed at step two and ALJ considered claimant's impairments later in sequential analysis, any error in omitting those impairments at step two was harmless) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's error in failing to list bursitis at step two harmless, where ALJ's decision showed any limitations posed thereby was considered later in sequential disability evaluation process); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ in failing to consider plaintiff's obesity at step two harmless, because ALJ did not err in evaluating plaintiff's impairments at later steps).

ORDER - 10